IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | |
|---|---|
| DR. RONNIE JOHNSON, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   No. 5:06CV00072 SWW |
| | * |
| CHARLES D. KNIGHT, Individually and as | * |
| Superintendent of Schools of the Watson | * |
| Chapel, Arkansas School District No. 24, | * |
| a Public Body Corporate; and the BOARD | * |
| OF EDUCATION OF THE WATSON | * |
| CHAPEL, ARKANSAS SCHOOL DISTRICT | * |
| NO. 24, A Public Body Corporate; | * |
| | * |
| Defendants. | * |

**Memorandum Opinion and Order**

This is an employment discrimination case. Ronnie Johnson, a black female, brings claims of race and gender discrimination and retaliation against the Superintendent of the Watson Chapel School District, Charles D. Knight, in his official and individual capacities, and the Board of Education of the Watson Chapel School District, pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* The case was tried to the Court on February 12-15, 2007, and September 17, 2007. The parties submitted post-trial briefs.[1] This opinion and order will constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

---

[1] On January 7, 2008, plaintiff filed a motion to correct the record and submit citation of authority. Defendants do not oppose the motion to correct record but do oppose any attempt by plaintiff to amend her complaint to include a state law claim of gender discrimination. The Court grants the motion to correct the record to reflect that Gene Stewart resigned in August 2002. The Court does not interpret plaintiff's motion as seeking to amend her complaint to add a state law claim. Plaintiff's complaint seeks relief for discrimination pursuant to 42 U.S.C. § 1983, which requires state action. *See* Compl. at ¶ 2.

**Findings of Fact**

Johnson has been employed with the Watson Chapel School District ("the District") since 1979. She began her employment as a teacher, and at all times relevant to this litigation, Johnson was a special education teacher. Now she is an assistant principal at the District's junior high school. Johnson graduated from the University of Arkansas at Pine Bluff with a B.A. degree in 1976. She earned a master's degree from Henderson State University in 1980, and a doctorate degree in school administration from the University of Arkansas at Little Rock in 2004. Along the way, she earned certifications in elementary and secondary administration as well as director of administration, which Johnson describes as a superintendent certification. Defendant Knight was the superintendent of the District for 25 years before his retirement on July 1, 2007.

In 1998, when Johnson became certified as an administrator, she began applying for administrative vacancies in the District. In February 1999, Johnson wrote Knight a letter, advising him that she had received her administrative certification and informing him of her desire for an administrative position with the District. *See* Pl's. Ex. 5. In April 2000, Johnson sent Knight another letter, updating her February 1999 application. *See* Pl's. Ex. 6.

Johnson had a letter of application on file when, in June 2000, Knight informed Johnson he had selected Henry Webb, a black male, to fill the assistant junior high school principal position that became available with the retirement of Mr. Roberts.[2] Apparently, in the summer of 1999, Johnson was interviewed for an elementary school administrative position. She did not

---

[2]As Superintendent, Knight would select a candidate and recommend to the District's Board of Education that the candidate be hired. The evidence is that the Board followed Knight's recommendations.

get the position. Annie Shaw, a black female, was promoted to assistant principal at Coleman Elementary School. Tr. at 765. In response to Knight's selection of Webb, Johnson said she went to see Knight and then wrote him a letter in July 2000, complaining about her failure to be selected for the elementary school position or the junior high position, and noting that Webb had only two years experience and came from outside the District. *See* Pl's. Ex. 7. She recalled that when she applied for the elementary position, Knight told she had no elementary experience. She complained that even though she had twenty-one years experience at the junior high level, Knight selected Webb who had only two years experience and none with the District. She also recalled that when they had spoken earlier, Knight told Johnson that while he was not trying to run her off, the Pine Bluff School District had plenty of administrative openings. *Id.* In response to her letter, Knight told Johnson he had given her serious consideration but decided against her, stating he was looking for someone "with appropriate credentials who possessed a mature bearing and an ability to communicate effectively." *See* Pl's. Ex. 8. Knight testified that a member of the Board of Education told him he knew someone who might be interested in the position, and Knight interviewed and hired Webb. Tr. at 467-68. Knight said Webb had two years of administrative experience in addition to years of experience as a classroom teacher. *See* Pl's. Ex. 8.

In June 2001, Johnson applied for an administrative position and was interviewed by Becca Davis, the junior high school principal, and Henry Webb, the assistant principal. Davis and Webb recommended two black females, Sandra Williams and Bobbie Bridges, who then were interviewed by Knight. Tr. at 475. Knight selected Williams to fill the assistant junior high principal position. *See* Pl's. Exs. 9 & 10; Tr. at 475-477. Williams had received a master's

degree in June 2000. *See* Pl's. Ex. 32. Knight testified his decision to recommend Williams was based heavily on Davis' recommendation. Tr. at 477. The District had a policy, referred to as GAAB, setting forth criteria for personnel decisions. Pl's. Ex. 22. Johnson testified that the policy, which listed number of years in the District as an objective qualification, was not followed when Knight selected Williams as assistant principal. Tr. at 878-79.

In 2002, there was a vacancy for principal at Coleman Elementary School, and Knight testified he spoke with Webb, Rosie Martin, and William Tietz, after he learned that Shaw, who was the assistant principal at Coleman, was not interested in the position. Tr. at 480-85. Knight said he knew Webb was interested in being a principal so he asked Webb to come to his office to visit. Tr. 481-82. Webb told Knight he was happy with his position at the junior high school. Pl's. Ex. 56. Knight did not consider Johnson for the position, Tr. at 484, and recommended that the Board hire Tietz, a white male from outside the District. *See* Pl's. Ex. 56.

On May 24, 2002, Johnson wrote Knight expressing her interest in an administrative position. *See* Pl's. Ex. 11. In August 2002, shortly before classes were to begin, Gene Stewart, the high school principal, resigned. Leydel Willis, a black female, and John Branch, a black male, were the assistant high school principals. Willis testified she suggested to Knight that she and Branch serve as co-principals. Tr. at 57. Knight took her suggestion and, rather than appointing an assistant principal, Knight asked Kent Baggett, a white male and the activities director, to help Willis and Branch with discipline. Tr. at 102, 133, 179-80. Baggett testified he helped out with discipline for about two years, performing many of the duties of an assistant principal. Tr. at 103-104; Pl'.s Ex. 24. During the 2004-05 school year, Knight assigned John Hayden, a white male and football coach, to assist Willis and Branch with discipline at the high

school. Tr. 173; Ex. 19.[3]   Hayden did not have an elementary or secondary principal certification at the time. Tr. at 153.  He, along with Baggett and Jeff Glover, another white male, were attending classes to obtain their administrative certifications.  Tr. at 98-99.  Knight testified it was easier to assign coaches to help out with discipline than to move a special education teacher.  Tr. 597-99.

In February 2003, Knight promoted Baggett to the position of athletic director.[4]  Baggett did not formally apply for the position but received the promotion after visiting with Knight about it.  Tr. at 99-100.  In 2003, Knight hired Tim Taylor, a white male from outside the District, to be principal of Owen Elementary School.[5]  Tr. at 596, 699; Defs.' Ex. 22.

Johnson applied for an assistant administrative position in June 2003, in April 2004, and in April 2005.  *See* Pl's. Exs. 12, 13, & 14.  She got no response from Knight.  Tr. at 698-99.  In May 2005, Johnson updated her letter of application, specifically mentioning her interest in a position previously held by Brenda Melton.  *See* Pl's. Ex. 15.  Johnson learned that Melton had been promoted to the position of assistant superintendent when Johnson was testifying in a trial on a co-worker's discrimination case against the District.  Johnson assumed Melton's former position was vacant.  Tr. at 701.

---

[3] The record is unclear whether Hayden began helping out with discipline at the high school prior to the 2004-05 school year.  Brenda Melton testified that when Baggett was approached about helping out with discipline when Stewart resigned in 2002, Baggett said Hayden's schedule was such that he could help with discipline.  *See* Tr. at 922. Melton said she told Baggett to work it out with Willis and Branch.

[4] Johnson claims she was denied the promotion to Athletic Director based on her gender and race. To the extent that the claim is timely, the Court entered judgement as a matter of law against Johnson at the close of her case.

[5] It is not clear from the record when in 2003 the decision was made to hire Taylor as elementary principal.

Knight responded to Johnson's letter on May 31, 2005, congratulating her on earning her doctorate, telling her that there were no administrative openings, and that Melton's promotion did not create a vacancy. *See* Pl's. Ex. 16. He also stated he would not inform Johnson personally of administrative openings, and called her request that he do so "unusual and presumptuous." *Id.* Johnson wrote Knight back in July 2005, stating it was not her intention to be insubordinate, and noting she had received her doctorate in August 2004, approximately a year earlier. *See* Pl's. Ex. 17.

In the summer of 2005, Becca Davis, the principal of the junior high school, resigned. Knight appointed the assistant principal, Webb, as principal on an interim basis, and assigned Hayden to help with discipline at the junior high school. Knight relieved Hayden of his teaching duties and gave him a pay increase. Tr. 133-35. Hayden handled duties similar to those of an assistant principal, such as routine discipline, administering student attendance and absentee policies, attending extracurricular activities, lunchroom duty, paddling students, and parent conferences. He also performed other duties as assigned by Webb. Tr. at 135-36. Williams continued to serve as an assistant principal at the junior high school. Tr. 405-06.

Johnson wrote Knight a letter in July 2005, applying for the assistant junior high principal position and suggesting the creation of two curriculum coordinator positions. *See* Ex. 18. Knight responded, telling Johnson he had decided not to fill the vacant assistant principal position because school was about to start. He said he had reassigned Hayden from the high school to the junior high school to help with discipline for the 2005-06 school year. *See* Pl's. Ex. 19.

In *Willis v. Watson Chapel Sch. Dist.,* 703 F.Supp. 1381 (ED.Ark. 1988), *aff'd in part, rev'd in part,* 899 F.2d 745 (8th Cir. 1990), the court found that Leydel Willis, a black female, was repeatedly denied appointment to administrative positions over the course of the years from 1983 to 1988 because of her sex. In each instance, a male was hired. Knight testified that when the court order came down, he placed Willis in an assistant principal position at the junior high school. Tr. at 454-55. At that time, Willis was the only female assistant principal in the District. Tr. at 10.

In 1999-2000, Knight made Phyllis Shepherd, his best friend's wife, principal of Owen Elementary School. Tr. 455 . She was the first female hired as a principal in the District. *Id.* When Shepherd left the position, Knight hired Phyllis Rankin, the sister of Jim Johnson, a member of the District's Board of Education, another white female, to replace Shepherd. *Id.* at 455-56. Tim Taylor succeeded Rankin.

In 1998, Rosie Martin became the first black female to serve in the District as an assistant principal at the elementary school level. Tr. at 652-3. In 2003, she filed a lawsuit alleging she was denied promotions to vacant principalships filled by Tietz and Taylor because of her race and sex. Tr. at 653; *Martin v. Knight,* No. 5:03CV00266 JLH. During the trial of Martin's case in May 2005, Johnson testified for Martin. Eventually, in June 2006, after a third jury trial, the court entered judgment in favor of Martin as to the 2002 principalship given to Tietz, and ordered Knight to place Martin in the next available elementary school principalship or other comparable position for which she is qualified.

Bobbie Bridges, a special education teacher in the District, testified she applied for every available administrative position from 1999-2006. She filed a complaint in May 2006, alleging

Knight discriminated against her on the basis of race and gender when he assigned Hayden to perform disciplinary duties at the junior high school. Tr. at 647-48.

In July 2005, the District decided to survey the staff regarding the performance of assistant principals and principals, and developed a new policy on hiring. Tr. 207. Knight testified that Webb scored the highest on the performance survey and Knight named Webb principal of the junior high school. Tr. 515-16. In the summer of 2006, Knight announced three assistant principal vacancies. A selection committee interviewed the candidates, and Knight selected Hayden and Glover, white males, for two of the positions, and Johnson for the third position. Hayden and Glover had just completed their course work for certification as principals. Tr. at 700. Knight placed Hayden at the high school, moved Williams from the junior high school to the high school, and placed Glover and Johnson at the junior high school. Tr. at 398, 407, 511.

Alice Horton, the District's special education supervisor, testified that when Johnson was selected for an assistant principal position in August of 2006, Horton was able to find a replacement for her without posting or advertising the position Tr. at 992-93; 996-7. She said she has never heard that there was a shortage of special education teachers in the District. Tr. at 998.

Johnson suffered humiliation and pain as a result of being denied promotions in spite of her qualifications, and said she was "devastated" when Knight told her he would keep her in the classroom until he decided it was time for her to come out. Tr. 750-51. She said she felt awful when she learned Baggett was in charge of discipline at the high school when he had not passed his test, and the situation was particularly difficult when Hayden was assigned to disciplinary

duties at the junior high school and she had to interact with him regarding the disciplining of her students. Tr. at 753-54. She testified that all the white women who were certified were made assistant principals or principals at one time or another if they applied but not all the black women. Tr. at 892-93.

In June 2005, Johnson filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging Knight retaliated against her for testifying on behalf of Martin by denying her the opportunity to be considered for the assistant superintendent position given to Melton. She also alleged discrimination on the basis of race and sex. After receiving her right-to-sue letter, Johnson filed the complaint before the Court on March 27, 2006.

## Conclusions of Law

Johnson asserts claims of race and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § § 2000e-17),  42 U.S.C.§1981, and 42 U.S.C. § 1983 based on the denial of due process and equal protection.

**1.     Title VII Claims**

In her EEOC complaint, Johnson alleges she was denied a promotion to the assistant superintendent position because of her race and sex and in retaliation for testifying in the Martin discrimination case. Brenda Melton, a white female, became the assistant superintendent of instruction, effective July 5, 2005. Johnson testified she found out about Melton's promotion when she was on the witness stand in the Martin case.

To prevail on a failure to promote claim based on gender discrimination, a plaintiff must show 1) she is a member of a protected group; 2) she was qualified for and applied for a promotion for an available position; 3) she was rejected for that position; and 4) a similarly

situated employee, outside the protected group, was promoted instead. *Dotson v. Delta Consol. Indus., Inc.,* 251 F.3d 780 (8th Cir. 2001). The Court finds Johnson failed to establish her claim of gender discrimination because Melton, another member of the protected group, female, received the promotion.

In order to prevail on a failure to promote claim based on race discrimination, a plaintiff must demonstrate 1) she is a member of a protected group; 2) she was qualified and applied for an available position; 3) she was rejected for that position; and 4) a similarly situated person, outside the protected group, was promoted instead. *Dotson, supra.* If a plaintiff is successful in proving her *prima facie* case, the burden shift to the employer to articulate a legitimate, nondiscriminatory reason for the employee's rejection. *See Pope v. ESA Serv., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005). Plaintiff must then be afforded the opportunity to show that the defendant's stated reason for rejecting her was in fact pretextual. *Id.*

Even assuming Johnson established a *prima facie* case, the District articulated a legitimate, non-discriminatory reason for its decision. Melton had been working as the District's curriculum director for a number of years. The title change to assistant superintendent brought a recognition of the duties she was already performing, along with additional compensation and authority. Johnson offered no evidence to establish the District's reason was a pretext for discrimination. In fact, Johnson confirmed that Melton had been performing the same duties for a number of years. Tr. at 786-87. The Court, therefore, denies Johnson's failure to promote claim based on race discrimination.

Johnson also asserts pursuant to Title VII that Knight denied her the position of assistant superintendent of curriculum in retaliation for her testimony in Martin's discrimination case

against the District.  In order to state establish a claim for retaliation under Title VII, Johnson must demonstrate that: (1) she engaged in statutorily-protected conduct; (2) some adverse employment action was taken against her; and (3) the two were causally connected.  *See Bassett v. City of Minneapolis,* 211 F.3d 1097, 1104-05 (8th Cir.2000); *Hubbard v. United Press Intern, Inc,* 330 N.W.2d 428 (Minn.1983).  The evidence is that Knight recommended Melton's promotion in May 2005, before Johnson testified in the Martin trial in June 2005.  Tr. at 815.  Johnson said she learned about Melton's promotion while she was on the witness stand.  Further, even if Johnson could establish a *prima facie* case, there is no evidence that Knight's decision to promote Melton was in any way based on the fact that Johnson either had already testified or intended to testify in the Martin case.

**2.**     **Section 1981 Race Discrimination Claim and Section 1983 Gender Discrimination Claim**

Johnson alleges defendants denied her promotions to administrative positions based on her race in violation of § 1981.  She also claims defendants violated her equal protection rights under the Fourteenth Amendment to the United States Constitution by discriminating against her on the basis of race and sex.  The statute of limitations for actions under § 1983 is three years.  *See Clark v. Mann,* 562 F.2d 1104, 1112 (8th Cir. 1977). Johnson asserts the statute of limitations for § 1981 actions is four years; defendants argue it is three years.

Section 1981 protects the right of all individuals to "make and enforce contracts" without respect to race.  42 U.S.C. § 1981(a).  In *Patterson v. McLean Credit Union,* 491 U.S. 164, 176 (1989), the Supreme Court held that "[s]ection 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts."  The Supreme Court further

explained that § 1981 "prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment . . . " *Id.* at 177.

In 1990, Congress enacted § 1658(a), which created a default four-year limitations period for federal causes of action created after that date. In 1991, Congress responded to *Patterson* by adding a new subsection to § 1981, defining the phrase "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The Supreme Court subsequently determined in *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004), that Congress's 1990 enactment of § 1658 changed the limitations period to four years for some claims under § 1981. Specifically, the Supreme Court held that "hostile work environment, wrongful termination, and failure-to-transfer claims did not allege a violation of the pre-1990 version of § 1981 but did allege violations" of the 1991 amendment to the statute and were governed by the 4-year statute of limitations. *Id.* at 383. *See also Jackson v. Homechoice, Inc.,* 368 F.3d 997 (8th Cir. 2004)(any claim created by the 1991 Civil Rights Act, which extended the protections of § 1981, is governed by a four-year statute of limitations).

Under *Patterson,* which applied to § 1981 before the amendments contained in the Civil Rights Act of 1991, a failure-to-promote claim was actionable under § 1981 if the promotion rose

"to the level of an opportunity for a new and distinct relation between the employee and the employer." *Id.* at 185. Here, Johnson is asserting defendants failed to promote her to various administrative positions because of her race. These are claims that were cognizable under *Patterson* and, thus, are subject to the three-year statute of limitations. *See Martin v. Georgia-Pacific Corp.,* 568 F.2d 58, 62-63 (8th Cir.1977)(statute of limitations for § 1981 claims is three-years); *Price v. M & H Valve Co.,* 177 Fed.Appx. 1, 10 (11th Cir.2006) (§ 1658 does not apply to a § 1981 failure-to-promote claim because such a claim would have stated a cause of action under the original version of § 1981 ). Because Johnson filed her complaint on March 27, 2006, the Court may consider only those allegedly unlawful and unconstitutional actions that took place on or after March 27, 2003.

Race discrimination claims brought pursuant to § 1981 and discrimination claims brought pursuant to § 1983 are analyzed under the same burden-shifting framework as Title VII claims. *Tipler v. Douglas County, Neb.,* 482 F.3d 1023, 1027 (8th Cir. 2007)(analysis similar when plaintiff alleges both Title VII and § 1983 claims based on a violation of equal protection); *Chambers v. Wynne Sch. Dist.,* 909 F.2d 1214 (8th Cir. 1990)(*McDonnell Douglas* test has been used to evaluate a plaintiff's *prima facie* showing of discrimination for both § 1981 and § 1983 claims). The establishment of a *prima facie* case creates a rebuttable presumption of discrimination. The employer may rebut this presumption by articulating one or more non-discriminatory reasons for the employment decision. When the *prima facie* case has been successfully rebutted, the presumption of discrimination drops out of the picture, and the burden shifts back to the plaintiff to present evidence to support a finding that the adverse employment decision was an act of intentional discrimination based on race or sex.

When Stewart resigned in August 2002, Knight made Willis and Branch co-principals of the high school. To address the need for assistance with discipline, Knight called Baggett and asked him to help Willis and Branch with discipline issues. Johnson contends Knight's decision to place Baggett and then Hayden in situations where they were performing the duties similar to those of an assistant principal deprived her of having the same opportunity to gain valuable experience in her quest for an administrative position. The following years, Knight continued to assign coaches to help with discipline at both the junior high and high school. Becca Davis, the junior high school principal resigned in the summer of 2005. Knight promoted Webb to the position of interim principal, with Williams as the assistant principal. Knight reassigned Hayden from the high school to the junior high school to assist with discipline.

The evidence is clear that Johnson was qualified to perform the duties of an assistant principal, and it is undisputed that Knight assigned Baggett and Hayden, white males, to the de facto position of assistant principal at the high school, and later reassigned Hayden to the junior high school. Defendants claim the reason Knight assigned Baggett and Hayden was because it was easier to assign part-time coaches additional duties than to replace classroom teachers. Defendants contend it is very difficult to replace special education teachers such as Johnson.

Plaintiff's claims regarding Knight's decision in August 2002 to place Baggett and Hayden into positions where they were performing the duties of assistant principals are barred by the statute of limitations. However, defendants' decision to continue the arrangement through 2003-04, 2004-05, and 2005-06 school years was intentional discrimination. Knight's reasons for the assignments are not credible. Knight says if he had promoted Johnson, a special education teacher, in August 2002, there would not have been enough time to hire a replacement. While that

may be true,[6] defendants come forward with no reason for not promoting Johnson to an assistant principal position in 2003, 2004, or 2005.

While not evidence of discrimination in this case, the District's history of race and sex discrimination casts additional doubt on the credibility of defendants' reasons for assigning males, white and black, to acting assistant principal positions, denying Johnson promotions in the 2003-04, 2004-05, and 2005-06 school years. The same decisionmakers were involved in the discrimination complaints successfully pursued by Willis and Martin. The findings of discrimination in those two instances is evidence that defendants purposefully acted in the same unlawful manner in denying Johnson the opportunity to serve as an assistant principal.

The evidence is clear that Johnson was objectively better qualified than the persons selected by Knight to fill various administrative positions over the years. His pattern of using subjective criteria and by-passing the interview process and employment policies weigh against the credibility of his explanations for denying Johnson the assistant principal positions. *See Robinson v. Sears, Roebuck and Co.,* 111 F.Supp.2d 1101, 1112 (E.D.Ark. 2000)(subjective employment procedures may be evidence of pretext). Knight went outside the District when he hired Webb and Tietz, passing over Johnson and other black females. He had a practice of placing people into positions without advertisement or application, and assigned Baggett and Hayden to serve as de facto assistant principals even though Johnson's credentials were clearly superior to theirs. Knight knew of Johnson's interest in administrative positions yet repeatedly denied her the opportunity for advancement. It was not until Leydel Willis successfully sued the

---

[6]The Court finds this explanation not credible. Williams was named assistant principal in August 2001. She was a special education teacher. Johnson herself was promoted to an assistant principal position in August 2006, and the District was able to hire a special education teacher.

District that a woman was placed in a principal position.  The first female hired after the *Willis* case was Knight's best friend's wife, and it was not until 1998 that a black female, Rosie Martin, was named to an assistant principal position.

The Court is well aware that "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir.1995).  The Court finds Johnson has carried her burden and established defendants engaged in intentional discrimination when they denied her the opportunity to serve in an assistant principal position during the 2003-04, 2004-05, and 2005-06 school years.

The Court finds Johnson is entitled to lost wages in the amount of $60,064.  This is the difference between her actual salary in 2003-04, 2004-05, 2005-06 and the salary she would have been paid had she been selected as senior high school assistant principal.  *See* Pl's Ex. 47.  The Court further finds Johnson is entitled to compensatory damages in the amount of $150,000.00.  Judgement will be entered accordingly.

DATED this 16th day of January 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE